FILED
CLERK, U.S. DISTRICT COURT

10/16/25

CENTRAL DISTRICT OF CALIFORNIA
BY: _____MRV_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 2:25-cr-00840-MEMF |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1962(d): Racketeer Influenced and Corrupt Organizations Conspiracy; 21 U.S.C. § 846: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances; 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(B), (b)(1)(C): Possession with Intent to Distribute Controlled Substances; 18 U.S.C. § 924(c)(1)(A)(i); Possess, Use, and Carry a Firearm in Furtherance of, and During and in Relation to, a Drug Trafficking Crime; 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm or Ammunition; 18 U.S.C. §§ 924 and 1963, 21 U.S.C. § 853, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| SALVATORE ANTHONY NANIA, aka "Crook," aka "C," SALVADOR PEREZ, aka "Smokey," aka "Reckless," ANGELICA WERTZ, aka "Dizzy," LEOPOLDO CANO-RODRIGUEZ, aka "Camel," VICTOR RENEE ZEPEDA RODRIGUEZ, aka "Shadow," JOSHUA ORDAZ, aka "Youngster," aka "YG," JESSE JULIAN LOPEZ, aka "Seko," RENE BALANZAR, aka "Suspect," RICHARD ANTHONY MANDAC, aka "Richie," JOSE VICENTE CASTRO, aka "Rojo," EDRAS EMMANUELLE ENRIQUEZ DURAN, aka "Herk," aka "John Wick," JOSEPH DOMINIC GIACCO, aka "Spanky," DAVID TITUS, | |

aka "Criminal," and
ANTHONY RONALD GANDARA,
  aka "Bimbo,"

           Defendants.

     The Grand Jury charges:

                          COUNT ONE

                     [18 U.S.C. § 1962(d)]

   [DEFENDANTS NANIA, PEREZ, WERTZ, CANO-RODRIGUEZ, ZEPEDA, ORDAZ,
      LOPEZ, BALANZAR, CASTRO, DURAN, GIACCO, TITUS, and GANDARA]

A.   THE RACKETEERING ENTERPRISE

     At times relevant to this Indictment:

     1.   Defendants SALVATORE ANTHONY NANIA, also known as ("aka") "Crook" and "C," SALVADOR PEREZ, aka "Smokey" and "Reckless," ANGELICA WERTZ, aka "Dizzy," LEOPOLDO CANO-RODRIGUEZ, aka "Camel," VICTOR RENEE ZEPEDA-RODRIGUEZ, aka "Shadow" ("ZEPEDA"), JOSHUA ORDAZ, aka "Youngster" and "YG," JESSE JULIAN LOPEZ, aka "Seko," RENE BALANZAR, aka "Suspect," JOSE VICENTE CASTRO, aka "Rojo," EDRAS EMMANUELLE ENRIQUEZ DURAN, aka "Herk" and "John Wick," JOSEPH DOMINIC GIACCO, aka "Spanky," DAVID TITUS, aka "Criminal," and ANTHONY RONALD GANDARA, aka "Bimbo," and others known and unknown to the Grand Jury, were members and associates of the Rancho San Pedro gang or "RSP," a criminal organization that engaged in, among other things, murder, conspiracy to commit murder, attempted murder, conspiracy to traffic in drugs, drug trafficking, conspiracy to commit robbery and extortion, robbery, and extortion. RSP operated within the Central District of California and elsewhere.

     2.   RSP, including its leaders, members, and associates, constituted an "enterprise," as defined by Title 18, United States

                               2

Code, Section 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce ("RSP," "the RSP enterprise," or "the enterprise"). The RSP enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

B.    CONDUCT OF THE ENTERPRISE

3.    RSP was a multi-generational gang that originated in the 1970s and claims as its territory the City of San Pedro, California, from Westmont Drive on the north to the Pacific Ocean on the south, and from Western Avenue on the west to the Port of Los Angeles on the east.

4.    RSP operated under the control of the "Mexican Mafia," aka "Eme." The Mexican Mafia was an organized group of individuals that controlled much of the distribution of drugs and other criminal activities within California state prisons. Outside of prison, the Mexican Mafia controlled many of the Hispanic street gangs in and around Los Angeles, including RSP. Members of Hispanic street gangs in southern California falling under the control of the Mexican Mafia were referred to as "Sureños." Members and associates of street gangs controlled by and/or affiliated with the Mexican Mafia had to pay "taxes" to members and associates of the Mexican Mafia in order to be permitted to maintain control over their territories and to distribute drugs and engage in other criminal activity. Mexican Mafia leaders directed the activities of RSP from within the California State Prison system, authorized the roles and responsibilities of members within the organization, and exacted the Mexican Mafia's portion of the revenues generated from the crimes they commit. In

return for protection from the Mexican Mafia and the privilege to operate in RSP territory, members and associates of RSP regularly paid taxes to the Mexican Mafia members who oversaw the gang.

5. As of the date of this Indictment, RSP had an estimated membership of approximately 500 individuals. RSP was divided into approximately six subsets or "cliques." These were "Santa Cruz," "Third Street," "the Locos," "16th Street," and two female cliques, "the Malditas," and "the Locas." Each clique typically had one or more leaders at any given point, commonly referred to as "shot callers," who were responsible for, among other things, managing the drug-trafficking operation in the clique's territory, collecting tax payments from proceeds of the enterprise's criminal activities for transmission to the Mexican Mafia, enforcing RSP's and the Mexican Mafia's codes of conduct, resolving inter-clique disputes, and representing their respective cliques in discussions with more senior RSP members.

6. In addition to shot callers for individual cliques, RSP also had an overall leader or shot caller for the gang who, among other things, was an intermediary between the cliques and the Mexican Mafia members and associates who control and oversee RSP. This overall gang leader was responsible for, among other things, disseminating information and orders from the Mexican Mafia to the cliques, and coordinating the transmission of tax payments from the cliques to the Mexican Mafia. Defendants CANO-RODRIGUEZ and ZEPEDA have each been RSP's overall gang leader. Defendants NANIA and PEREZ were high-ranking RSP members and Mexican Mafia associates who, while incarcerated at times relevant to this Indictment, would pass orders from a Mexican Mafia member and/or high-ranking RSP members to RSP

4

members on the street. Mexican Mafia Member #1 is the Mexican Mafia member who had authority and control over RSP.

7. RSP members both identified themselves and threatened rivals by using hand gestures, referred to as "throwing" gang "signs." Commonly for RSP, the "sign" was to form the letter "R," or other letters or numbers referencing the RSP member's clique such as an "S" and a "C" for the Santa Cruz clique, and gesture in a way that identified members to each other, threatened rival gang members, or intimidated the general public. Members also frequently displayed tattoos reading "RSP," "Ranch," or other variations of the gang's name, cliques, or streets within the gang's territory. RSP members and associates also frequently included the number "13" and other representations of the letter "M" or "Sureño" in their tattoos or in "tagging" as a means to demonstrate loyalty to and support from the Mexican Mafia. Sports paraphernalia was also used to identify gang or clique membership. For example, the cap for the St. Louis Cardinals baseball team might be worn by a "Locos" clique member because the "STL" logo worn by the baseball team could be viewed as representing the "Locos." RSP members typically referred to other members by their monikers, or nicknames, and often did not know fellow gang members' legal names.

8. RSP used spray-painted "tagging" to demonstrate control over gang "territory" or "turf" to both rival gang members and the members of the local community. Members used "RSP" and combinations of letters and numbers to represent the gang and the member's clique. Members were also known to tag the letters and numbers of rival gangs, and then cross them out, in a show of disrespect to the rival gang, for example by crossing out the letter "C" to show disrespect

to rival "Crip" gangs. This was done both as a challenge to rival gang members and to communicate among RSP members. RSP members used tagging not only to identify territory claimed by RSP, but also as a means of intimidation, intending to induce fear in the general public, rival gang members, and law enforcement.

9. RSP had various violent rival gangs throughout South Los Angeles. RSP's rivals included other Sureño gangs, such as the Wilmas, Youngcrowd, and the Stoners, as well as Black gangs like the Dodge City Crips. In an ongoing effort to assert dominance and power over these rival street gangs, RSP members engaged in murders, attempted murders, shootings, beatings, kidnappings, and assaults against rivals and victims wrongly believed to be rivals.

10. RSP controlled its territory through intimidation and acts of violence directed against law enforcement, rival gang members, fellow RSP gang members, and the general public. Gang members earned status and respect by committing violent acts. Additionally, commission of violent acts by RSP members enhanced the gang's overall reputation for violence in the community, intimidating rival gangs and civilians in RSP's territory.

11. RSP had a self-imposed code of conduct, which was enforced among its members by imposing monetary fines and threatening and committing acts of violence against members who broke the rules. RSP also adopted and enforced the Mexican Mafia's rules. Failure to adhere to Mexican Mafia rules could lead to the issuance of a "green light," meaning an order for the offending gang member to be killed on sight. "Green lights" were frequently issued in retaliation for a perceived "disrespect" to a Mexican Mafia leader, to punish the unauthorized collection of "tax" payments in a neighborhood

6

controlled by the gang, or to sanction individuals who trafficked drugs without the gang's authorization or without paying the required "tax" to RSP and the Mexican Mafia. Gang members earned status and respect with the Mexican Mafia and gang community by executing "green lights."

12. RSP was highly aware of the activities of law enforcement. RSP members constantly communicated with each other regarding law enforcement activity and who may be cooperating with law enforcement. For example, RSP members and their associates frequently alerted each other by telephone when law enforcement officers were in gang territory. Further, RSP members assaulted and disciplined other members for talking to law enforcement about gang activity or having their names appear in law enforcement reports, known as "paperwork." Once RSP had evidence that someone had cooperated with law enforcement, RSP would issue a "green light" as to that person.

13. Most RSP members engaged in violent crime, drug trafficking, or both. RSP members who engaged in drug trafficking distributed various substances, including methamphetamine, cocaine, PCP, fentanyl, heroin, prescription medication, and other drugs. RSP members and associates worked together to successfully operate their drug-trafficking enterprise by (a) supplying drugs to other members of the gang to sell; (b) sharing drug sales so that multiple members of the gang could profit off of a single customer; (c) referring drug customers to other members of the gang when certain members were sold out; (d) "fronting," or providing drugs to other members of the gang with no up-front cost, with the plan to recoup payment after the drugs are sold; (e) traveling together or transporting other gang members to obtain drugs from a supplier; (f) operating drug stash

houses and/or drug sales locations for and with other members of the gang; and (g) using common code words to disguise the sales of various drugs and their quantities, such as a "zip" for an ounce and "p" or "package deal" for a pound. RSP members who were not suppliers to the gang generally sold drugs to street-level consumers who visited or lived inside the gang's territory.

14.  As long as RSP paid its "tax" to the Mexican Mafia, RSP members were authorized to sell drugs in RSP-controlled territories. Individual RSP members who sold drugs were often required to provide a portion of their drug proceeds to the shot caller of their clique. The shot caller, in turn, would use that money to pay the clique's "rent" to RSP's overall gang leader who, in turn, would pay the Mexican Mafia. Money that a clique member earned for the clique by selling drugs or through other criminal ventures and contributed to the shot caller was considered that member's "rent" contribution to the clique. Earning money for the clique by selling drugs or through other criminal ventures was a way to gain status within RSP, and with the Mexican Mafia.

15.  RSP gang members and associates also maintained and distributed a ready supply of firearms, including handguns, shotguns, and assault rifles, to protect their drug-distribution trade, carry out attacks in the neighborhood, and to enforce the authority of the gang within its territory. Firearms were frequently stolen, unregistered, or personally manufactured so that their use in the commission of violent crimes could not be readily connected to the gang member responsible for the offense. Traceable firearms typically needed to be discarded or destroyed after they had been used in a crime. The trade and sale of firearms, including unregistered or

8

stolen firearms, by RSP members was therefore commonplace, both as a means of obtaining replacement firearms and to dispose of firearms that had recently been used in the commission of a violent crime.

16.  RSP also derived income from the extortion of businesses and vendors who operated in RSP-controlled territory. RSP extorted both legitimate and illegitimate businesses alike, though RSP tended to focus on unsanctioned, or "grey-market," businesses owned or run by illegal aliens, who rarely reported this extortion to law enforcement, despite the threats of violence which accompany the extortion. In exchange for the extortion payments, RSP offered "protection" to the businesses from other gang members.

17.  RSP gang members and associates were typically undeterred from the commission of crimes by arrests or periods of incarceration and would often continue to plan and execute crimes while in custody. Hence, incarcerated gang members, like defendants NANIA and PEREZ, made use of telephone calls from inside detention facilities, prison notes (known as "kites"), meetings among inmates within an institution, and prison visits, as means to continue to coordinate and conduct the crimes of the organization, despite incarceration. Non-incarcerated members and associates also frequently coordinated with incarcerated members in order to continue to commit crimes and maintain the role of the incarcerated members in the crimes of the organization.

C.    PURPOSES OF THE ENTERPRISE

18.  The purposes of the RSP enterprise included, but were not limited to, the following:

a.    Enriching members and associates of the Mexican Mafia through criminal activities, including drug sales, gun sales,

robberies, and extortion, as well as the remittance of proceeds generated as a result of RSP's criminal activities (referred to as "taxes");

b.    Preserving, promoting, and protecting the power, territory, and profits of RSP and its members and associates, through threats of violence and actual acts of violence, including robbery, kidnapping, extortion, assault, murder, and attempted murder;

c.    Exposing and punishing RSP members and associates who were perceived to have violated RSP's and the Mexican Mafia's codes of conduct;

d.    Maintaining RSP's control and authority over its territory, often through threats, intimidation, and acts of violence committed against law enforcement, local residents, and rival gangs; and

e.    Violently retaliating against rival gang members or perceived outsiders who challenged RSP's authority or who failed to pay debts owed to RSP members and associates.

D.    THE RACKETEERING CONSPIRACY

19.    Beginning on a date unknown, and continuing to the date of this Indictment, in Los Angeles County, within the Central District of California, and elsewhere, defendants NANIA, PEREZ, WERTZ, CANO-RODRIGUEZ, ZEPEDA, ORDAZ, LOPEZ, BALANZAR, CASTRO, DURAN, GIACCO, TITUS, and GANDARA, and others known and unknown to the Grand Jury, being persons employed by and associated with RSP, an enterprise which was engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the

conduct of the affairs of the RSP enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), which pattern of racketeering consisted of:

a. multiple acts involving:

i. murder, in violation of California Penal Code Sections 21a, 31, 182, 187, 189, and 664;

ii. kidnapping, in violation of California Penal Code Sections 21a, 31, 182, 207, and 664;

iii. extortion, in violation of California Penal Code Sections 21a, 31, 182, 518, 519, 520, and 664; and

iv. robbery, in violation of California Penal Code Sections 21a, 31, 182, 211, 212, 212.5, 213, and 664; and

b. multiple offenses involving drug trafficking, in violation of Title 21, United States Code, Sections 841(a)(1) and 846 (relating to the distribution of, possession with intent to distribute, and conspiracy to distribute and possess with intent to distribute controlled substances, including methamphetamine, phencyclidine ("PCP"), fentanyl, heroin, and cocaine).

20. It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

E.    MEANS AND METHODS OF THE ENTERPRISE

21. The means and methods by which members and associates of the RSP enterprise conducted and participated in the conduct of the affairs of the RSP enterprise included, but were not limited to, the following:

11

a.    Defendants NANIA and PEREZ, and others known and unknown to the Grand Jury, would communicate directly and through intermediaries with defendants WERTZ, BALANZAR, GIACCO, and TITUS, and others known and unknown to the Grand Jury, to give directions regarding the business of RSP.

b.    Defendants NANIA, CANO-RODRIGUEZ, PEREZ, WERTZ, ZEPEDA, LOPEZ, BALANZAR, CASTRO, DURAN, GIACCO, and GANDARA, and others known and unknown to the Grand Jury, would commit, attempt to commit, conspire to commit, and threaten to commit acts of violence to preserve, protect, and expand RSP's criminal operations, to promote and further the activities of RSP, and to enhance their own status within the gang.

c.    Mexican Mafia Member #1 and defendants NANIA, PEREZ, WERTZ, CANO-RODRIGUEZ, ZEPEDA, ORDAZ, LOPEZ, BALANZAR, CASTRO, DURAN, GIACCO, TITUS, and GANDARA, and others known and unknown to the Grand Jury, would engage in the trafficking of drugs and firearms, and would commit robberies and extortion to generate revenue for the enterprise.

d.    Defendants CANO-RODRIGUEZ, PEREZ, ZEPEDA, ORDAZ, LOPEZ, BALANZAR, CASTRO, DURAN, GIACCO, TITUS, and GANDARA, and others known and unknown to the Grand Jury, would illegally maintain firearms and ammunition, and would possess, use, and carry, and direct others to possess, use, and carry firearms, in order to commit and threaten acts of violence, including murder and assault, to enforce the authority of RSP, and to further the activities of the enterprise.

e.    Defendants WERTZ, CANO-RODRIGUEZ, ZEPEDA, LOPEZ, and CASTRO, and others known and unknown to the Grand Jury, would extort payments from business owners and others in RSP territory.

f.    Defendants NANIA and PEREZ, and other members and associates of RSP, would maintain RSP's good standing with the Mexican Mafia by complying with Mexican Mafia rules and orders regarding, among other things, the collection of taxes, the distribution of controlled substances, the transfer of firearms, and decisions regarding who held positions of authority within RSP out on the streets.

g.    Members and associates of RSP would communicate by telephone and social media to share information about, among other things, trafficking in controlled substances, the rules of RSP and the Mexican Mafia, identifying RSP members in good standing, and targeting people who broke RSP and Mexican Mafia rules.

h.    Members and associates of the enterprise would use various techniques to avoid law enforcement scrutiny of the enterprise's criminal activities and to evade and frustrate law enforcement, such as using coded language to discuss criminal activities, discarding or switching telephones, using contraband telephones while incarcerated, evasive driving, notifying confederates of suspected law-enforcement surveillance, and other countersurveillance techniques.

F.    OVERT ACTS

22.    In furtherance of the conspiracy, and to accomplish its object, on or about the following dates, defendants NANIA, PEREZ, WERTZ, CANO-RODRIGUEZ, ZEPEDA, ORDAZ, LOPEZ, BALANZAR, CASTRO, DURAN, GIACCO, TITUS, and GANDARA, together with others known and unknown to

13

the Grand Jury, committed and willfully caused to be committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1:    On April 7, 2009, May 29, 2009, October 1, 2009, and October 19, 2009, defendant CASTRO participated in the sale of a total of six firearms to an undercover officer.

Overt Act No. 2:    On May 29, 2009, and October 22, 2009, defendant CASTRO participated in the sale of a total of approximately 70.9 grams of methamphetamine to an undercover officer.

Overt Act No. 3:    On October 29, 2009, defendant CASTRO and two other RSP members sold approximately 27.5 grams of methamphetamine and two firearms to an undercover officer for $3,700 at defendant CASTRO's residence in San Pedro, in RSP territory.

Overt Act No. 4:    On September 10, 2011, defendant PEREZ and two unidentified associates asked a man in RSP territory where he was from and then began shooting at the man and his friends.

Overt Act No. 5:    On February 3, 2015, defendant BALANZAR and two others approached a Westside Wilmas gang member walking in RSP territory and shot him in the chest and legs.

Overt Act No. 6:    On February 15, 2018, defendant NANIA, by telephone using coded language, told an incarcerated co-conspirator that NANIA controlled the prison yard while Mexican Mafia Member #2 was in solitary confinement.

Overt Act No. 7:    On February 16, 2018, defendant NANIA, by telephone using coded language, told a co-conspirator that the co-conspirator needed defendant NANIA's permission to smuggle heroin and other contraband into the prison.

14

Overt Act No. 8:    From February 22 through 28, 2018, defendant NANIA, in a series of telephone calls and texts using coded language, coordinated an attempted sale of black tar heroin to a person that he believed to be a drug customer but who was actually an undercover officer.

Overt Act No. 9:    On December 7, 2023, defendant TITUS sold two firearms to a confidential informant for $2,000 at a residence in Wilmington, California.

Overt Act No. 10:    On January 7, 2024, a co-conspirator, by telephone using coded language, told defendant TITUS to go with defendant DURAN to a gambling location, steal the laptops and other devices used for online gambling, "smash" and "stomp the fuck out" an RSP member identified as "Stranger" and his girlfriend who were operating the location, and to tell defendant DURAN that the location would be given to him to operate.

Overt Act No. 11:    On January 20, 2024, defendant DURAN, by text message using coded language, said that he was seeking to purchase a firearm that would attach to a drum magazine, a firearm attachment typically capable of holding up to 50 rounds of ammunition, and sent a photograph.



15

Overt Act No. 12:    On January 23, 2024, defendant DURAN, by text message using coded language, asked an RSP member if she knew anyone who wanted to purchase an ounce or two of cocaine, vouched for the quality, and discussed prices for different quantities of cocaine.

Overt Act No. 13:    On February 2, 2024, defendant TITUS, by telephone using coded language, told defendant WERTZ that he went with defendants DURAN and LOPEZ to the home of an RSP associate and robbed a firearm from the RSP associate by force, and defendant WERTZ offered to get ammunition.

Overt Act No. 14:    On February 13, 2024, defendant GIACCO, by telephone using coded language, informed a co-conspirator that defendant GIACCO and another co-conspirator were selling drugs out of a residence and that defendant GIACCO possessed two firearms and cocaine.

Overt Act No. 15:    On February 14, 2024, defendant GIACCO possessed on his person approximately 12.31 grams of cocaine, and defendants GIACCO and DURAN possessed the following in a residence they shared: methamphetamine, cocaine, a digital scale, two firearms, four firearm magazines, and approximately 99 rounds of live ammunition.

Overt Act No. 16:    On December 19, 2023, defendant LOPEZ, using coded language, texted a co-conspirator that defendant LOPEZ had "two buyers" interested in purchasing a .45 caliber firearm.

Overt Act No. 17:    On June 19, 2024, RSP member Richard Anthony Mandac, aka "Richie," ("Mandac") by telephone using coded language, told defendant LOPEZ that he planned to buy a firearm from defendant BALANZAR.

16

Overt Act No. 18:   On June 21, 2024, defendant LOPEZ, by text message using coded language, told defendant BALANZAR that he needed drugs, and defendant BALANZAR responded that he had drugs but was in Hollywood.

Overt Act No. 19:   On June 21, 2024, defendant LOPEZ, by telephone using coded language, told defendant CASTRO that he needed drugs, and defendant CASTRO agreed to provide some.

Overt Act No. 20:   On June 21, 2024, defendant LOPEZ, by telephone using coded language, told Mandac that defendant BALANZAR was in possession of two firearms, and expressed concern that defendant BALANZAR may have been caught with the firearms and arrested.

Overt Act No. 21:   On June 21, 2024, defendant TITUS, by telephone using coded language, arranged to meet with a drug customer to sell an ounce of PCP for $200 in the area of Lomita and Avalon Boulevards in Wilmington and placed an item in the customer's minivan.

Overt Act No. 22:   On June 21, 2024, defendant TITUS, by telephone using coded language, told defendant PEREZ that he gave a .45 caliber firearm to defendant GIACCO after defendant GIACCO was shot at by members of a rival gang; defendants PEREZ and TITUS planned to take back the firearm from defendant GIACCO and sell it for $500; and defendant PEREZ said that he would send a high-ranking RSP member to collect the firearm and would order defendant GIACCO to return it.

Overt Act No. 23:   On June 22, 2024, defendant BALANZAR, by telephone using coded language, during a conversation among

17

defendants PEREZ, BALANZAR, TITUS, and GIACCO, told defendant PEREZ that he got the firearm from defendant GIACCO.

Overt Act No. 24:    On June 22, 2024, defendant PEREZ, by telephone using coded language, during a conversation between defendants PEREZ, BALANZAR, TITUS, and GIACCO, told defendant GIACCO that he had already sold the gun he had taken from him but that he would arrange for a "homie" to get a different gun to defendant GIACCO so that he could protect himself from members of a rival gang.

Overt Act No. 25:    On June 22, 2024, defendant PEREZ, by telephone using coded language, told defendant TITUS that members of the Stoners gang were in a dispute with the Santa Cruz clique of RSP because a member of that clique had kidnapped and killed a Stoners gang member. Defendant PEREZ said that his "little brother" is in the Stoners gang and that defendant PEREZ would kill the little brother if he did not claim loyalty to RSP.

Overt Act No. 26:    On June 22, 2024, Mandac by telephone using coded language, told defendant LOPEZ that he had information about the location of a robbery target; Mandac and defendant LOPEZ made plans to rob the individual at gunpoint as he left a residence; and Mandac told defendant LOPEZ that he would be there to pick him up in ten minutes.

Overt Act No. 27:    On June 22, 2024, Mandac traveled to defendant LOPEZ's house and the two traveled together to an area in north San Pedro.

Overt Act No. 28:    On June 25, 2024, defendant BALANZAR, while a passenger in a car, possessed two firearms, two magazines, multiple rounds of ammunition, and methamphetamine.

18

Overt Act No. 29:   On June 26, 2024, Mandac, via social media using coded language, agreed to try to find a buyer for an assault rifle that a co-conspirator was offering for sale for $250.

Overt Act No. 30:   On July 5, 2024, in a series of telephone calls using coded language, defendant TITUS arranged to meet defendant GANDARA to purchase fentanyl for a drug customer and afterward complained about the quality of the fentanyl that defendant GANDARA had provided.

Overt Act No. 31:   On July 5, 2024, defendant TITUS, by telephone using coded language, told defendant GANDARA that he needed an ounce of drugs, and defendant GANDARA agreed to supply him with half an ounce and told defendant TITUS to come to his house.

Overt Act No. 32:   On July 5, 2024, defendant TITUS, by telephone using coded language, agreed to sell a drug customer half a gram of heroin for $30 and told the customer that he also had two bottles of PCP.

Overt Act No. 33:   On July 6, 2024, an RSP associate, by telephone using coded language, alerted defendant TITUS to police presence in the area, describing the make and model of undercover police vehicles.

Overt Act No. 34:   On July 8, 2024, defendant GANDARA, in a series of telephone calls using coded language, agreed to meet defendant TITUS at Normandie Avenue and 256th Street in Harbor City, California to supply defendant TITUS with fentanyl for a drug customer, and then met defendant TITUS at that location to deliver the fentanyl.

Overt Act No. 35:   On July 11, 2024, defendant GANDARA possessed approximately 0.878 grams of fentanyl on his person and approximately 11.99 grams of PCP in his car in San Pedro.

Overt Act No. 36:   On July 17, 2024, defendant TITUS, by telephone using coded language, agreed to sell a firearm to a firearm customer for $900 and agreed to pay a $50 fee to a co-conspirator who connected him to the customer.

Overt Act No. 37:   On August 6, 2024, defendant WERTZ, by telephone using coded language, told defendant GIACCO that she was taxing smoke shops operating within RSP territory under the direction of defendant NANIA, but that defendants BALANZAR and ZEPEDA and another RSP member had collected taxes from a smoke shop in her territory and had not sent the money to defendant NANIA.

Overt Act No. 38:   On August 22, 2024, a co-conspirator, by telephone using coded language, told defendant GIACCO that RSP members have a duty to protect other RSP members from rival gangs and to retaliate against anyone who harms other RSP members, and defendant GIACCO agreed.

Overt Act No. 39:   On August 23, 2024, defendant GIACCO, by telephone using coded language, asked defendant WERTZ for half a gram of oxycodone pills for a third party.

Overt Act No. 40:   On August 29, 2024, defendant BALANZAR, possessed a 9mm caliber handgun; 11 live rounds of miscellaneous brands of 9mm ammunition; one live round of an unknown caliber ammunition; a black steel magazine; approximately 9.12 grams of methamphetamine; 4.152 grams of black tar heroin; 2.908 grams of a mixture and substance containing fentanyl; and multiple digital

scales at a residence on West Sepulveda Street in San Pedro, in RSP territory.

Overt Act No. 41:   On September 14 and 15, 2024, defendant PEREZ, by telephone using coded language, offered to help defendant ORDAZ purchase a firearm for $500 from a co-conspirator, and defendant ORDAZ said he planned to buy it the next day.

Overt Act No. 42:   On September 16, 2024, defendant CASTRO, in a series of telephone calls using coded language, asked defendant LOPEZ for a pound of drugs to "front" a drug customer who had agreed to pay $500 the next day, and defendant LOPEZ arranged to pick up the drugs from defendant ZEPEDA.

Overt Act No. 43:   On September 17, 2024, defendant ZEPEDA, in a series of telephone calls and text messages using coded language between defendants ZEPEDA, LOPEZ, and CASTRO, asked defendant LOPEZ when the drug customer would have the $500, and defendants CASTRO and LOPEZ agreed to try to collect payment from the customer.

Overt Act No. 44:   On September 17, 2024, defendant TITUS, by telephone using coded language, advised an RSP member known as "Maniac" to shoot a non-gang member to get his "shit" back and said that he would get him a firearm to use; defendant TITUS said that if a high-ranking RSP member objected, Maniac could tell him that defendant TITUS authorized the shooting.

Overt Act No. 45:   On September 17, 2024, defendant TITUS said that defendant PEREZ runs RSP under the direction of Mexican Mafia Member #1, known as "Stoney."

Overt Act No. 46:   On September 17, 2024, a drug customer paid defendant TITUS $30 by CashApp and complained about the quality of drugs defendant TITUS had sold her.

Overt Act No. 47:    On September 17, 2024, defendants ZEPEDA and LOPEZ, in a series of text messages using coded language, planned to sell a pound of drugs to a buyer for $650, and defendant ZEPEDA vouched for the quality of the drugs.

Overt Act No. 48:    On September 19, 2024, defendant TITUS, by telephone using coded language, asked defendant GANDARA to drive him to a residence on Washington Street in Carson, California, to pick up some PCP.

Overt Act No. 49:    On September 19, 2024, defendant TITUS, by telephone using coded language, agreed to sell PCP to a drug customer and told another drug customer that he had PCP to sell, and a third drug customer asked him to sell her drugs before she got paid.

Overt Act No. 50:    On September 18 and 19, 2024, defendant ZEPEDA, in a series of telephone calls and text messages using coded language, demanded that defendants LOPEZ and CASTRO collect payment from the drug customer who had been fronted a pound of drugs so that defendant ZEPEDA could pay his supplier; defendant LOPEZ said that defendant CASTRO would provide his handgun as collateral for the debt.

Overt Act No. 51:    On September 20, 2024, defendant LOPEZ, in a series of telephone calls and texts using coded language, told defendant ZEPEDA that he had confiscated defendant CASTRO's firearm; defendant ZEPEDA replied that defendant CASTRO would get his gun back when the customer had paid and told defendant LOPEZ that he was on his way to pick up the firearm.

Overt Act No. 52:    On September 20, 2024, defendants LOPEZ and CASTRO, by telephone using coded language, agreed that the customer's

22

failure to pay for the pound of drugs put their lives at risk, and defendant CASTRO said that he would apologize to defendant ZEPEDA.

Overt Act No. 53:   On September 20, 2024, defendant CASTRO, by telephone using coded language, told defendant LOPEZ that a rival gang had vandalized an area within RSP territory; defendants LOPEZ and CASTRO discussed whether any RSP members had crossed out the graffiti and agreed to go to the area to do it themselves.

Overt Act No. 54:   On September 20, 2024, defendants TITUS and PEREZ, by telephone using coded language, told a drug customer to contact defendant PEREZ to find a source for fentanyl.

Overt Act No. 55:   On September 21, 2024, defendant LOPEZ, in a series of text messages using coded language, asked defendant CANO-RODRIGUEZ for ammunition, and defendant CANO-RODRIGUEZ agreed to bring it to defendant LOPEZ's residence.

Overt Act No. 56:   On September 21, 2024, defendant LOPEZ, by telephone using coded language, asked an RSP member whether graffiti by rival gang members in the area of 12th Street and Center Street in RSP territory had been removed, and the RSP member agreed to check.

Overt Act No. 57:   On September 22, 2024, defendant TITUS, by telephone using coded language, offered to sell an ounce of PCP to a drug customer for $120; the customer said she would rather buy it from defendant GANDARA, and defendant TITUS said that defendant TITUS would call the customer if he saw or spoke to defendant GANDARA, whose phone was broken.

Overt Act No. 58:   On September 23, 2024, defendant LOPEZ, by telephone using coded language, asked defendant ZEPEDA if he would take the pound of narcotics back instead of receiving payment from the buyer. Defendant ZEPEDA stated that his suppliers from Tijuana,

23

Mexico, had visited him and asked for their payment. Defendant ZEPEDA vouched for the quality of his product and stated that he would need payment up front from the buyer going forward.

Overt Act No. 59:   On September 25, 2024, defendant GANDARA possessed on his person and in the car he was driving approximately 12.293 grams of methamphetamine, two digital scales, a 9mm caliber firearm with a polymer frame, a firearm magazine, and nine rounds of ammunition.

Overt Act No. 60:   On September 26, 2024, defendant LOPEZ, by telephone using coded language, warned defendant ZEPEDA that there were undercover officers in the area of 7th Street and Grand Avenue in San Pedro, in RSP territory.

Overt Act No. 61:   On September 26, 2024, defendant PEREZ, by telephone using coded language, told defendant BALANZAR that a co-conspirator possessed firearms for sale and provided the co-conspirator's telephone number; defendant BALANZAR called the number the same day, and in follow-up calls on September 27 and September 30, 2024.

Overt Act No. 62:   On September 27, 2024, defendant ZEPEDA, in a series of telephone calls using coded language, told defendant LOPEZ that defendant TITUS was selling heroin out of a motel in the territory belonging to Wilmas, a rival gang of RSP, and defendants ZEPEDA and LOPEZ planned to confront, hold hostage, and extort defendant TITUS in response to this violation of RSP rules; defendant LOPEZ said that he would get a shotgun and then pick up defendant ZEPEDA.

Overt Act No. 63:   On September 27, 2024, defendant LOPEZ, by telephone using coded language, arranged to pick up a firearm from an RSP member.

Overt Act No. 64:   On September 27, 2024, defendant ZEPEDA, by telephone using coded language, said that defendant BALANZAR would go with defendant LOPEZ to extort defendant TITUS and would bring a firearm, and that, going forward, defendant TITUS would have to buy the heroin he sells from defendant BALANZAR and pay taxes on his drug sales to the "homies" who control the Wilmas.

Overt Act No. 65:   On September 28, 2024, defendant LOPEZ, by telephone using coded language, told a co-conspirator that defendant BALANZAR had been told not to discipline an RSP member who committed an unsanctioned murder of an RSP member known as "Bear" because the RSP member who murdered "Bear" was making firearms for RSP.

Overt Act No. 66:   On September 29, 2024, defendant ORDAZ possessed a .38 caliber revolver with five live rounds of .38 caliber ammunition, one spent casing of .38 caliber ammunition, and several plastic baggies containing approximately 159.95 grams of methamphetamine on Pacific Avenue in San Pedro, in RSP territory.

Overt Act No. 67:   On September 30, 2024, defendant ZEPEDA, by telephone using coded language, asked defendant LOPEZ for the name and address of the drug customer who had failed to pay for the pound of drugs, stating that his drug supplier wanted to send someone to collect the payment; defendant LOPEZ agreed to provide the customer's name and address.

Overt Act No. 68:   On October 1, 2024, defendant BALANZAR possessed a loaded .380 caliber firearm, two plastic bags of

25

approximately 3.92 grams of fentanyl, and approximately 0.292 grams of heroin on Sepulveda Boulevard in San Pedro, in RSP territory.

Overt Act No. 69:  On October 2, 2024, defendant LOPEZ, by text message using coded language, told a co-conspirator that he could borrow a stolen car but that he had to use it to "work" and could not return it empty handed.

Overt Act No. 70:  On October 2, 2024, defendant CANO-RODRIGUEZ, by telephone using coded language, advised defendant LOPEZ that police were in the area, and defendant LOPEZ asked defendant CANO-RODRIGUEZ to help him get rid of a firearm.

Overt Act No. 71:  On October 5, 2024, defendant LOPEZ, by telephone using coded language, told defendant CANO-RODRIGUEZ that he needed a pound of drugs for a drug customer; defendant CANO-RODRIGUEZ said that he had only a half pound and told defendant LOPEZ to contact defendant ZEPEDA.

Overt Act No. 72:  On October 5, 2024, defendant ZEPEDA, in a series of telephone calls using coded language, agreed to supply defendant LOPEZ a pound of drugs to sell, saying that he had three pounds at his house, and that defendants LOPEZ and CASTRO could weigh out a pound and could pay him for the drugs after the sale was complete.

Overt Act No. 73:  On October 5, 2024, defendants LOPEZ and CASTRO went to defendant ZEPEDA's residence on West 15th Street in San Pedro, in RSP territory, where defendant LOPEZ called defendant ZEPEDA to ask where to find a scale to weigh the pound of drugs.

Overt Act No. 74:  On October 5, 2024, defendants LOPEZ and CASTRO obtained a pound of drugs from defendant ZEPEDA's residence

and drove to the Colony Inn Motel, on Crescent Avenue, in the City of Buena Park, to sell the drugs.

Overt Act No. 75:  On October 22, 2024, defendant ORDAZ possessed approximately 83.1 grams of methamphetamine in two clear, plastic bags; one portable scale; two small plastic baggies; and social security cards, a driver's license, an identification card, mail, a check, and credit card statements, in other persons' names.

Overt Act No. 76:  On November 23, 2024, defendant TITUS, by telephone using coded language, told an associate that defendant TITUS lent someone named "Shady" his firearm and that Shady would be arrested if he were caught with it.

Overt Act No. 77:  On November 23, 2024, defendant ZEPEDA, by telephone using coded language, told a co-conspirator that he was looking for PCP to sell to a member of the Wilmas gang; the co-conspirator said that he did not want to do any favors for the Wilmas but that he would ask around.

Overt Act No. 78:  On November 25, 2024, defendant PEREZ, by telephone using coded language, asked defendant TITUS which RSP member was selling fentanyl, and defendant TITUS identified the person as "Weasel"; both agreed that Weasel should be paying tax on his drug sales, and defendant TITUS said that he would tell Weasel that "the homies said you got to pay rent," and would collect from Weasel for defendant PEREZ.

Overt Act No. 79:  On November 26, 2024, defendant PEREZ, in a series of telephone calls using coded language, told Shady to return defendant TITUS's firearm because defendant TITUS needed it to perform a task for defendant PEREZ and "the homies"; defendant PEREZ told defendant TITUS that he would not have sent him "into danger"

without a firearm; defendant TITUS later told defendant PEREZ that Shady returned the firearm and that he would perform the task immediately.

Overt Act No. 80:   On November 26, 2024, defendant TITUS, in a series of telephone calls using coded language, agreed to sell heroin to a drug customer, to bring another drug customer methamphetamine, and to get PCP for a third customer.

Overt Act No. 81:   On November 26, 2024, defendant TITUS, by telephone, paid defendant PEREZ by giving him the numbers to a prepaid card.

Overt Act No. 82:   On November 27, 2024, defendant TITUS, by telephone using coded language, agreed to get PCP for a drug customer.

Overt Act No. 83:   On November 27, 2024, defendant GANDARA, by telephone using coded language, agreed to supply defendant TITUS with PCP.

Overt Act No. 84:   On November 27, 2024, defendants CANO-RODRIGUEZ and CASTRO, by telephone using coded language, agreed to go together to buy drugs from a source of supply called "the Chino."

Overt Act No. 85:   On November 27, 2024, defendants CANO-RODRIGUEZ and CASTRO drove to a Chinese restaurant located on East Anaheim Street, in Wilmington; defendant CANO-RODRIGUEZ left the restaurant carrying a large black box.

Overt Act No. 86:   On November 28, 2024, defendant CASTRO, in a series of text message using coded language, notified multiple people that he was restocked with drugs for sale.

28

Overt Act No. 87:  On December 4, 2024, defendant ZEPEDA, by telephone using coded language, agreed to obtain for defendant BALANZAR 60 or 70 grams of drugs for $250.

Overt Act No. 88:  On December 4, 2024, defendant TITUS, by telephone using coded language, discussed with a co-conspirator the fact that a third party and two other people were arrested for driving a stolen car and firearm possession with a firearm that defendant TITUS had given the third party.

Overt Act No. 89:  On December 4, 2024, defendants TITUS and PEREZ, by telephone using coded language, planned for defendant TITUS to collect taxes on drug sales from a fentanyl dealer.

Overt Act No. 90:  On December 4, 2024, defendant CANO-RODRIGUEZ, by telephone using coded language, said that he had drugs to sell and asked if defendant CASTRO knew anyone looking to buy.

Overt Act No. 91:  On December 4 and 5, 2024, defendant CASTRO, by telephone using coded language, agreed to supply a co-conspirator with heroin to sell and discussed prices for heroin and fentanyl.

Overt Act No. 92:  On December 5, 2024, defendant CASTRO, by telephone using coded language, told a co-conspirator that he was about to go to Orange County to sell another half pound of drugs.

Overt Act No. 93:  On December 5, 2024, defendant CASTRO, by telephone using coded language, agreed with a co-conspirator that no gang member is allowed to snitch to law enforcement about another gang member. The co-conspirator described this rule as the "code" that was applicable to "everybody that is playing the game."

Overt Act No. 94:  On December 5, 2024, defendant ZEPEDA, by telephone using coded language, arranged to go with a co-conspirator

29

to purchase drugs, and said that defendant BALANZAR would provide the money to buy the drugs.

Overt Act No. 95:  On December 6, 2024, defendant CANO-RODRIGUEZ, by telephone using coded language, told defendant CASTRO to collect money from defendant WERTZ to pay a Mexican Mafia member.

Overt Act No. 96:  On December 6, 2024, defendant CASTRO, by telephone using coded language, asked an RSP member if he knew where defendant CASTRO could buy heroin.

Overt Act No. 97:  On December 6, 2024, defendant TITUS, by telephone using coded language, paid defendant PEREZ $200 by giving him numbers for a prepaid card.

Overt Act No. 98:  On December 7, 2024, defendant TITUS, by telephone using coded language, agreed to try to supply a co-conspirator with a firearm to use in a confrontation with members of another gang.

Overt Act No. 99:  On December 7, 2024, defendant ZEPEDA, in a series of telephone calls using coded language, agreed to sell drugs to a customer for $100 but stated that he does not usually sell such small quantities and later informed the customer when he had arrived with the drugs.

Overt Act No. 100:  On December 8, 2024, defendant CASTRO, by telephone using coded language, agreed to sell drugs to a drug customer, and then met with the customer outside of his residence to conduct the transaction.

Overt Act No. 101:  On December 8, 2024, defendant CASTRO, by text message and telephone using coded language, agreed to deliver drugs to a drug customer, and told the customer when he was three blocks away.

Overt Act No. 102:  On December 9, 2024, defendant TITUS, by telephone using coded language, paid defendant PEREZ $100 by providing the numbers for a prepaid card and promised to send an additional $50 the next day.

Overt Act No. 103:  On December 10, 2024, defendant TITUS, by telephone using coded language, told defendant PEREZ that defendant TITUS would collect money from RSP members for defendant PEREZ.

Overt Act No. 104:  On December 10, 2024, defendant CANO-RODRIGUEZ possessed 43.1 grams of methamphetamine in a clear plastic baggie, multiple Ziploc bags containing a total of approximately 2,793 grams of methamphetamine, a black semi-automatic 9mm caliber handgun loaded with 19 rounds of ammunition in the attached magazine, 38 rounds of additional .40 caliber or 9mm caliber ammunition, a scale, a scoop, and multiple clear plastic baggies in a car parked outside his residence on West 26th Street in San Pedro, within RSP territory.

Overt Act No. 105:  On December 10, 2024, defendant CANO-RODRIGUEZ, by telephone using coded language, told defendant CASTRO that a search warrant for evidence of drugs and firearms had just been executed at his house and advised defendant CASTRO to get out of his house.

Overt Act No. 106:  On December 11, 2024, defendant CANO-RODRIGUEZ, using coded language in a call between defendants ORDAZ, CASTRO, and CANO-RODRIGUEZ, told defendant ORDAZ he was going to give him work to do for RSP, and defendant ORDAZ said that he would need to bring his firearm.

31

Overt Act No. 107:  On December 11, 2024, defendant TITUS, by telephone and text message using coded language, agreed to provide PCP to a drug customer.

Overt Act No. 108:  On December 11, 2024, defendant ZEPEDA, by telephone using coded language, asked a co-conspirator for drugs and said that he had tried to obtain drugs from defendant BALANZAR but could not reach him.

Overt Act No. 109:  On December 12, 2024, defendants CASTRO and CANO-RODRIGUEZ, by telephone using coded language, discussed their belief that defendant ORDAZ had told the police about drugs at defendant CANO-RODRIGUEZ's residence, and in retaliation, planned to kidnap defendant ORDAZ and take him to the desert to murder him to enforce RSP's rules.

Overt Act No. 110:  On December 13, 2024, defendant CASTRO, by telephone using coded language, told defendant ORDAZ to meet him on 15th Street, in San Pedro, in RSP territory, to return ammunition that defendant CANO-RODRIGUEZ had given to defendant ORDAZ, and defendants CASTRO and ORDAZ met at that location in defendant CASTRO's car before being interrupted by law enforcement.

Overt Act No. 111:  On December 12, 2024, defendant GANDARA possessed approximately 2.559 grams of fentanyl, approximately 99 small glass vials used to sell PCP, multiple small plastic baggies, a 12-gauge sawed-off shotgun, a semi-automatic firearm with no serial numbers, six rounds of 12-gauge ammunition, 63 rounds of 9mm caliber ammunition, and a clear plastic firearm magazine in a residence on South Grand Avenue in San Pedro, in RSP territory.



Overt Act No. 112:  On December 14, 2024, defendant CASTRO, by text message using coded language, told defendant LOPEZ that he was restocked with drugs, and said that defendant LOPEZ should get some from him before he ran out.

Overt Act No. 113:  On December 14, 2024, defendant CASTRO, by text message and telephone using coded language, offered to sell a drug customer half an ounce of drugs for $40 and said that he would sell an additional ounce for $100.

Overt Act No. 114:  On December 14, 2024, defendant WERTZ, by text message, told defendant CASTRO that "Crook wants to know what the hell happened," referring to the search of CANO-RORIGUEZ's residence on December 10, 2024.

Overt Act No. 115:  On December 15, 2024, defendants PEREZ and TITUS, by telephone using coded language, discussed plans for defendant TITUS to send money to defendant PEREZ.

Overt Act No. 116:  On December 15, 2024, defendant CASTRO, by telephone using coded language, agreed to bring fentanyl to a co-conspirator, stating that it was strong and had "knocked out" someone who tested it.

Overt Act No. 117:  On December 16, 2024, defendant WERTZ, by text messages using coded language, asked defendant CASTRO, "WHERE IS THE $5700 or the waters," referring to methamphetamine, and if the

33

money and drugs were "lost in the raid." Defendant WERTZ also texted defendant CASTRO, "All that I care that my homeboy gets his shit."

Overt Act No. 118:  On December 17, 2024, defendant TITUS, by telephone using coded language, asked defendant PEREZ if he wanted defendant TITUS to collect tax payments for him from an RSP member.

Overt Act No. 119:  On December 17, 2024, defendant CANO-RODRIGUEZ, by telephone using coded language, told defendant CASTRO that a "green light" had issued for an RSP member who had been caught possessing child pornography, and that defendant CASTRO would have to kill the RSP member if he saw him.

Overt Act No. 120:  On February 10, 2025, defendant WERTZ pounded on the door of a residence on 7th Street in RSP territory and brandished a firearm while falsely claiming that she was an agent of the Federal Bureau of Investigation in an attempt to rob the resident inside.

Overt Act No. 121:  In July 2025, defendant NANIA, by text message using coded language, told an RSP member that he wanted to purchase 10 pounds of methamphetamine to split with the RSP member and that he would sell his share for $800 per pound.

Overt Act No. 122:  In July 2025, an RSP member, by text message using coded language, asked defendant NANIA where he could get a half pound of cocaine, to which defendant NANIA replied "Ok let me see what I can do."

Overt Act No. 123:  On August 6, 2025, an RSP member, by telephone, told defendant NANIA that defendant BALANZAR had sold "dope" for $950 per pound to an associated criminal organization operating in RSP territory, and defendant NANIA said that he had

directed defendants BALANZAR and TITUS to establish the agreed-upon price of $1,000 per pound.

Overt Act No. 124:  On August 6, 2025, defendant NANIA, by telephone using coded language, provided orders to an RSP member regarding the collection of extortion payments from businesses operating in RSP territory.

Overt Act No. 125:  On August 12, 2025, defendant NANIA, in a series of calls using coded language, provided orders to an RSP member regarding the collection of debts from drug transactions and of extortion payments from a business operating in RSP territory.

Overt Act No. 126:  In September 2025, RSP members stored drugs and firearms at a residence at in San Pedro (the "Armona Premises").

Overt Act No. 127:  In September 2025, defendants BALANZAR and ZEPEDA possessed firearms at the Armona Premises.

Overt Act No. 128:  In September 2025, defendant BALANZAR sold methamphetamine out of the Armona Premises.

Overt Act No. 129:  On October 7, 2025, defendants BALANZAR and ZEPEDA, and other co-conspirators, possessed two firearms, including a Sig P229, 9mm caliber pistol, at the Armona Premises.

Overt Act No. 130:  On October 7, 2025, defendant BALANZAR possessed a loaded firearm with no manufacturer's markings or serial

number (commonly referred to as a "ghost gun").



Overt Act No. 131:  On October 7, 2025, defendant GANDARA possessed a firearm loaded with 15 rounds of ammunition.

36

COUNT TWO

[21 U.S.C. § 846]

[DEFENDANTS NANIA, PEREZ, WERTZ, CANO-RODRIGUEZ, ZEPEDA, ORDAZ, LOPEZ, BALANZAR, CASTRO, DURAN, GIACCO, TITUS, and GANDARA]

23. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

A.  OBJECTS OF THE CONSPIRACY

24. Beginning on a date unknown, and continuing to the date of this Indictment, in Los Angeles County, within the Central District of California, and elsewhere, defendants NANIA, PEREZ, WERTZ, CANO-RODRIGUEZ, ZEPEDA, ORDAZ, LOPEZ, BALANZAR, CASTRO, DURAN, GIACCO, TITUS, and GANDARA, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally distribute and possess with intent to distribute:

a.  At least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(viii);

b.  At least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(viii);

c.  At least 100 grams or more of a mixture and substance containing a detectable amount of phencyclidine ("PCP"), a Schedule III controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(iv);

d.  At least 40 grams of a mixture and substance containing a detectable amount of fentanyl, a Schedule II narcotic

37

drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(vi);

     e.   Heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C); and

     f.   Cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

25. The objects of the conspiracy were to be accomplished, in substance, as follows:

     a.   Defendants NANIA and PEREZ, and other members and associates of RSP, would maintain RSP's good standing with the Mexican Mafia by complying with Mexican Mafia rules and orders regarding, among other things, the collection of taxes, the distribution of controlled substances, the transfer of firearms, and decisions regarding who held positions of authority within RSP out on the streets.

     b.   Defendant NANIA, and others known and unknown to the Grand Jury, would smuggle contraband cellular telephones into prison and distribute them to incarcerated Mexican Mafia members and associates to use to communicate with RSP members regarding drug trafficking and other activities in territory controlled by RSP.

     c.   Defendant WERTZ would communicate orders on behalf of defendant NANIA regarding drug trafficking activity and collect taxes from various RSP members and associates from drug trafficking activities.

d.    Defendants CANO-RODRIGUEZ and ZEPEDA, and others known and unknown to the Grand Jury, would act as shot callers for RSP cliques, with responsibility over their respective clique's activities, including drug-trafficking, tax collection, control over RSP territory, and for the physical discipline of RSP members for violating RSP or Mexican Mafia rules or failing to pay taxes from drug proceeds.

e.    Defendants CANO-RODRIGUEZ, ZEPEDA, and TITUS, and others known and unknown to the Grand Jury, would obtain drugs to distribute from drug sources of supply.

f.    Defendants NANIA, CANO-RODRIGUEZ, PEREZ, ZEPEDA, LOPEZ, BALANZAR, CASTRO, and GANDARA, and others known and unknown to the Grand Jury, would provide, and would assist RSP members and associates in obtaining, drugs for further distribution in RSP territory.

g.    Defendants WERTZ, CANO-RODRIGUEZ, ZEPEDA, ORDAZ, LOPEZ, BALANZAR, CASTRO, DURAN, GIACCO, TITUS, and GANDARA, and others known and unknown to the Grand Jury, would possess with intent to distribute, distribute, and facilitate the distribution of controlled substances to individual customers in pre-arranged transactions.

h.    Defendants CANO-RODRIGUEZ, ZEPEDA, ORDAZ, LOPEZ, BALANZAR, CASTRO, DURAN, GIACCO, TITUS, and GANDARA, and others known and unknown to the Grand Jury, maintained firearms in order to protect themselves and their drug supply and proceeds, provide protection against rival gang members, and intimidate unauthorized drug dealers doing business in their territory.

i.    Defendants PEREZ, TITUS, and CANO-RODRIGUEZ, and others known and unknown to the Grand Jury, provided, and assisted RSP members and associates in obtaining, firearms for use in connection with their drug distribution activities and to protect and control RSP territory.

C.    OVERT ACTS

26.  In furtherance of the conspiracy, and to accomplish its objects, on or about the following dates, defendants NANIA, PEREZ, WERTZ, CANO-RODRIGUEZ, ZEPEDA, ORDAZ, LOPEZ, BALANZAR, CASTRO, DURAN, GIACCO, TITUS, and GANDARA, and others known and unknown to the Grand Jury, committed various overt acts, within the Central District of California, including, but not limited to, the overt acts  set forth in Section F of Count One of this Indictment, which are realleged here.

COUNT THREE

[21 U.S.C. § 841(a)(1), (b)(1)(C)]

[DEFENDANT GIACCO]

27.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

28.  On or about February 14, 2024, in Los Angeles County, within the Central District of California, defendant GIACCO knowingly and intentionally possessed with intent to distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

41

COUNT FOUR

[21 U.S.C. § 841(a)(1), (b)(1)(C)]

[DEFENDANT GIACCO]

29.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

30.  On or about February 14, 2024, in Los Angeles County, within the Central District of California, defendant GIACCO knowingly and intentionally possessed with intent to distribute methamphetamine, a Schedule II controlled substance.

COUNT FIVE

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT GIACCO]

31.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

32.  On or about February 14, 2024, in Los Angeles County, within the Central District of California, defendant GIACCO knowingly used and carried a firearm, namely, a black, Taurus G2C handgun, 9mm caliber, bearing serial number 1C073410, and a black, Glock 22 handgun, .40 caliber, bearing serial number BDWB598, during and in relation to, and possessed the firearm in furtherance of, a drug trafficking crime, namely, Possession with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), as charged in Counts Two, Three, and Four of this Indictment.

43

COUNT SIX

[18 U.S.C. § 922(g)(1)]

[DEFENDANT GIACCO]

33. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

34. On or about February 14, 2024, in Los Angeles County, within the Central District of California, defendant GIACCO knowingly possessed firearms and ammunition, namely, a Taurus G2C, 9mm caliber pistol, bearing serial number 1C073410, a black Glock 22 .40 caliber handgun bearing serial number BDWB598, five rounds of Cascade Cartridge Inc. 9mm caliber ammunition, 35 rounds of Guilio Fiocchi Lecco 9mm caliber ammunition, five rounds of Hornady 9mm caliber ammunition, 15 rounds of Remington Peters .40 caliber ammunition, 27 rounds of Winchester 9mm caliber ammunition, one round of Prvi Partizan 9mm caliber ammunition, three rounds of Perfecta 9mm caliber ammunition, one round of Sellier and Bellot 9mm caliber ammunition, five rounds of Winchester .38 caliber ammunition, one round of Remington Peters .38 caliber ammunition, one round of Barnes 9mm caliber ammunition, one round of Wolf 9mm caliber ammunition, and one round of Remington Peters 9mm caliber ammunition, in and affecting interstate and foreign commerce.

35. Defendant GIACCO possessed such firearms and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

a. Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the

44

Superior Court for the State of California, County of Los Angeles, Case Number TA160189, on or about April 4, 2024;

b.    Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court for the State of California, County of Los Angeles, Case Number TA153646, on or about April 27, 2021;

c.    Conspiracy to Commit a Felony, in violation of California Penal Code Section 182.5, in the Superior Court for the State of California, County of Los Angeles, Case Number NA116301, on or about April 8, 2021;

d.    Felon in Possession of a Firearm, in violation of California Penal Code Section 29800(a)(1), in the Superior Court for the State of California, County of Los Angeles, Case Number NA115844, on or about April 8, 2021;

e.    False Imprisonment, in violation of California Penal Code Section 236, in the Superior Court for the State of California, County of Los Angeles, Case Number NA093334, on or about June 25, 2013;

f.    Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court for the State of California, County of Los Angeles, Case Number NA091625, on or about April 4, 2012;

g.    Possession of a Controlled Substance While Armed, in violation of California Health and Safety Code Section 11370.1(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA091625, on or about April 4, 2012;

h.    Felon in Possession of a Firearm, in violation of California Penal Code Section 29800(a)(1), in the Superior Court for

45

the State of California, County of Los Angeles, Case Number NA091625, on or about April 4, 2012;

i.     Transportation of a Controlled Substance, in violation of California Health and Safety Code Section 11379(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA091625, on or about April 4, 2012;

j.     Receipt of Known Stolen Property, in violation of California Penal Code Section 496(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NNA081095, on or about May 4, 2009;

k.     Appropriate Lost Property, in violation of California Penal Code Section 485, in the Superior Court for the State of California, County of Los Angeles, Case Number NNA081095, on or about May 4, 2009;

l.     Possession of a Controlled Substance While Armed, in violation of California Health and Safety Code Section 11370.1(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA076559, on or about April 24, 2008; and

m.     Carrying a Loaded Firearm, in violation of California Penal Code Section 12031(a)(1), in the Superior Court for the State of California, County of Los Angeles, Case Number NA076559, on or about April 24, 2008.

COUNT SEVEN

[21 U.S.C. § 841(a)(1), (b)(1)(C)]

[DEFENDANT DURAN]

36.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

37.  On or about February 14, 2024, in Los Angeles County, within the Central District of California, defendant DURAN knowingly and intentionally possessed with intent to distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

47

COUNT EIGHT

[21 U.S.C. § 841(a)(1), (b)(1)(C)]

[DEFENDANT BALANZAR]

38.    Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

39.    On or about June 25, 2024, in Los Angeles County, within the Central District of California, defendant BALANZAR knowingly and intentionally possessed with intent to distribute methamphetamine, a Schedule II controlled substance.

COUNT NINE

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT BALANZAR]

40.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

41.  On or about June 25, 2024, in Los Angeles County, within the Central District of California, defendant BALANZAR knowingly used and carried two firearms, namely, a Glock Model 48 9mm caliber handgun, bearing serial number BLRK518, and a Tisas Model ZIG M45 .45 caliber handgun bearing serial number T062021AP04094, during and in relation to, and possessed the firearms in furtherance of, a drug trafficking crime, namely, Possession with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B) and 841(a)(1), (b)(1)(C), as charged in Counts Two and Eight of this Indictment.

49

COUNT TEN

[18 U.S.C. § 922(g)(1)]

[DEFENDANT BALANZAR]

42. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

43. On or about June 25, 2024, in Los Angeles County, within the Central District of California, defendant BALANZAR knowingly possessed firearms and ammunition, namely, a Glock Model 48 9mm caliber handgun, bearing serial number BLRK518, a Tisas Model ZIG M45 .45 caliber handgun bearing serial number T062021AP04094, two rounds of Cascade Cartridges Inc. 9mm ammunition, three rounds of Federal Cartridge 9mm ammunition, two rounds of Winchester 9mm ammunition, one round of Precision Made Cartridges 9mm ammunition, one round of CBC Global Ammunition 9mm ammunition, one round of Giulio Fiocchi Lecco 9mm ammunition, and six rounds of Aguila .45 caliber ammunition, in and affecting interstate and foreign commerce.

44. Defendant BALANZAR possessed such firearms and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

a. Carrying a Loaded Firearm in Public, in violation of California Penal Code Section 25850(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA093492, on or about October 31, 2012;

b. Prohibited Possession of a Firearm, in violation of California Penal Code Section 29800(a)(1), in the Superior Court for the State of California, County of Los Angeles, Case Number NA098162, on or about February 7, 2014; and

50

c.    Attempted Murder, in violation of California Penal Code Sections 187(a) and 664, in the Superior Court for the State of California, County of Los Angeles, Case Number NA101367, on or about December 4, 2015.

COUNT ELEVEN

[21 U.S.C. § 841(a)(1), (b)(1)(B)(viii)]

[DEFENDANT BALANZAR]

45.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

46.  On or about August 29, 2024, in Los Angeles County, within the Central District of California, defendant BALANZAR knowingly and intentionally possessed with intent to distribute at least five grams, that is approximately 9.12 grams of methamphetamine, a Schedule II controlled substance.

COUNT TWELVE

[21 U.S.C. § 841(a)(1), (b)(1)(C)]

[DEFENDANT BALANZAR]

47.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

48.  On or about August 29, 2024, in Los Angeles County, within the Central District of California, defendant BALANZAR knowingly and intentionally possessed with intent to distribute heroin, a Schedule I narcotic drug controlled substance.

COUNT THIRTEEN

[21 U.S.C. § 841(a)(1), (b)(1)(C)]

[DEFENDANT BALANZAR]

49.   Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

50.   On or about August 29, 2024, in Los Angeles County, within the Central District of California, defendant BALANZAR knowingly and intentionally possessed with intent to distribute fentanyl, a Schedule II narcotic drug controlled substance.

54

COUNT FOURTEEN

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT BALANZAR]

51.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

52.  On or about August 29, 2024, in Los Angeles County, within the Central District of California, defendant BALANZAR knowingly used and carried a firearm, namely, a Taurus PT111G2, 9mm caliber handgun, bearing serial number AAM107077, during and in relation to, and possessed the firearm in furtherance of, a drug trafficking crime, namely, Possession with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B) and 841(a)(1), (b)(1)(C), as charged in Counts Two and Eleven through Thirteen of this Indictment.

55

COUNT FIFTEEN

[18 U.S.C. § 922(g)(1)]

[DEFENDANT BALANZAR]

53. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

54. On or about August 29, 2024, in Los Angeles County, within the Central District of California, defendant BALANZAR knowingly possessed a firearm and ammunition, namely, a Taurus PT111G2, 9mm caliber handgun, bearing serial number AAM107077, five rounds of Winchester 9mm ammunition, three rounds of CFL 9mm ammunition, two rounds of FCO 9mm ammunition, and one round of WNA ammunition, in and affecting interstate and foreign commerce.

55. Defendant BALANZAR possessed such firearm and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

a. Carrying a Loaded Firearm in Public, in violation of California Penal Code Section 25850(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA093492, on or about October 31, 2012;

b. Prohibited Possession of a Firearm, in violation of California Penal Code Section 29800(a)(1), in the Superior Court for the State of California, County of Los Angeles, Case Number NA098162, on or about February 7, 2014; and

c. Attempted Murder, in violation of California Penal Code Sections 187(a) and 664, in the Superior Court for the State of California, County of Los Angeles, Case Number NA101367, on or about December 4, 2015.

56

COUNT SIXTEEN

[21 U.S.C. § 841(a)(1), (b)(1)(C)]

[DEFENDANT BALANZAR]

56.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

57.  On or about October 1, 2024, in Los Angeles County, within the Central District of California, defendant BALANZAR knowingly and intentionally possessed with intent to distribute fentanyl, a Schedule II narcotic drug controlled substance.

COUNT SEVENTEEN

[21 U.S.C. § 841(a)(1), (b)(1)(C)]

[DEFENDANT BALANZAR]

58.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

59.  On or about October 1, 2024, in Los Angeles County, within the Central District of California, defendant BALANZAR knowingly and intentionally possessed with intent to distribute heroin, a Schedule I narcotic drug controlled substance.

58

COUNT EIGHTEEN

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT BALANZAR]

60.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

61.  On or about October 1, 2024, in Los Angeles County, within the Central District of California, defendant BALANZAR knowingly used and carried a firearm, namely, a Lorcin L380, .380 caliber pistol, bearing serial number 122005, during and in relation to, and possessed the firearm in furtherance of, a drug trafficking crime, namely, Possession with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), as charged in Counts Two, Sixteen, and Seventeen of this Indictment.

59

COUNT NINETEEN

[18 U.S.C. § 922(g)(1)]

[DEFENDANT BALANZAR]

62. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

63. On or about October 1, 2024, in Los Angeles County, within the Central District of California, defendant BALANZAR knowingly possessed a firearm, namely, a Lorcin L380, .380 caliber pistol, bearing serial number 122005, in and affecting interstate and foreign commerce.

64. Defendant BALANZAR possessed such firearm knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

a. Carrying a Loaded Firearm in Public, in violation of California Penal Code Section 25850(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA093492, on or about October 31, 2012;

b. Prohibited Possession of a Firearm, in violation of California Penal Code Section 29800(a)(1), in the Superior Court for the State of California, County of Los Angeles, Case Number NA098162, on or about February 7, 2014; and

c. Attempted Murder, in violation of California Penal Code Sections 187(a) and 664, in the Superior Court for the State of California, County of Los Angeles, Case Number NA101367, on or about December 4, 2015.

COUNT TWENTY

[21 U.S.C. § 841(a)(1), (b)(1)(C)]

[DEFENDANT GANDARA]

65.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

66.  On or about July 11, 2024, in Los Angeles County, within the Central District of California, defendant GANDARA knowingly and intentionally possessed with intent to distribute phencyclidine (PCP), a Schedule II controlled substance.

COUNT TWENTY-ONE

[21 U.S.C. § 841(a)(1), (b)(1)(C)]

[DEFENDANT GANDARA]

67.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

68.  On or about July 11, 2024, in Los Angeles County, within the Central District of California, defendant GANDARA knowingly and intentionally possessed with intent to distribute fentanyl, a Schedule II narcotic drug controlled substance.

COUNT TWENTY-TWO

[21 U.S.C. § 841(a)(1), (b)(1)(B)(viii)]

[DEFENDANT GANDARA]

69.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

70.  On or about September 25, 2024, in Los Angeles County, within the Central District of California, defendant GANDARA knowingly and intentionally possessed with intent to distribute more than five grams, that is approximately 12.293 grams, of methamphetamine, a Schedule II controlled substance.

63

COUNT TWENTY-THREE

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT GANDARA]

71.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

72.  On or about September 25, 2024, in Los Angeles County, within the Central District of California, defendant GANDARA knowingly used and carried a firearm, namely, 9mm firearm with no manufacturer's markings or serial number (commonly referred to as a "ghost gun"), during and in relation to, and possessed the firearm in furtherance of, a drug trafficking crime, namely, Possession with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(viii), as charged in Counts Two and Twenty-Two of this Indictment.

64

COUNT TWENTY-FOUR

[18 U.S.C. § 922(g)(1)]

[DEFENDANT GANDARA]

73. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

74. On or about September 25, 2024, in Los Angeles County, within the Central District of California, defendant GANDARA knowingly possessed ammunition, namely, five rounds of Winchester 9mm ammunition, one round of Olympic Industries 9mm ammunition, one round of X-Treme Bullets 9mm ammunition, one round of Sellier and Bellot 9mm ammunition, and one round of CBC Global Ammunition 9mm ammunition, in and affecting interstate and foreign commerce.

75. Defendant GANDARA possessed such ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

a. Robbery, in violation of California Penal Code Section 211, in the Superior Court for the State of California, County of Los Angeles, Case Number A022924, on or about February 26, 1982;

b. Assault with a Firearm, in violation of California Penal Code Section 245(a)(2), in the Superior Court for the State of California, County of Los Angeles, Case Number NA026455, on or about September 9, 1996;

c. Possession of Controlled Substance, in violation of California Health and Safety Code Section 11377(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA080318, on or about March 20, 2009;

d. Failure to Register as Sex Offender, in violation of California Penal Code Section 290.013(a), in the Superior Court for

65

the State of California, County of Los Angeles, Case Number NA080318, on or about March 20, 2009;

e.    Vehicle Theft, in violation of California Vehicle Code Section 10851(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA109295, on or about June 20, 2018; and

f.    Sale of Vehicle Identification Number, in violation of California Vehicle Code Section 10752(b), in the Superior Court for the State of California, County of Los Angeles, Case Number NA109295, on or about June 20, 2018.

COUNT TWENTY-FIVE

[21 U.S.C. § 841(a)(1), (b)(1)(C)]

[DEFENDANT GANDARA]

76.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

77.  On or about December 12, 2024, in Los Angeles County, within the Central District of California, defendant GANDARA knowingly and intentionally possessed with intent to distribute fentanyl, a Schedule II narcotic drug controlled substance.

COUNT TWENTY-SIX

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT GANDARA]

78.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

79.  On or about December 12, 2024, in Los Angeles County, within the Central District of California, defendant GANDARA knowingly used and carried a firearm, namely, Mossberg Maverick 88, 12-gauge shotgun, bearing serial number MV58159K, during and in relation to, and possessed the firearm in furtherance of, a drug trafficking crime, namely, Possession with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), as charged in Counts Two and Twenty-Five of this Indictment.

COUNT TWENTY-SEVEN

[18 U.S.C. § 922(g)(1)]

[DEFENDANT GANDARA]

80.   Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

81.   On or about December 12, 2024, in Los Angeles County, within the Central District of California, defendant GANDARA knowingly possessed a firearm and ammunition, namely, Mossberg Maverick 88, 12-gauge shotgun, bearing serial number MV58159K, six rounds of Winchester 12 gauge ammunition, one round of Eclipse Cartridge Company 12 gauge ammunition, 45 rounds of Sellier and Bellot 12 gauge ammunition, five rounds of X-Treme Bullets 12 gauge ammunition, 11 rounds of Federal Cartridge 12 gauge ammunition, and one round of LAX 12 gauge ammunition, in and affecting interstate and foreign commerce.

82.   Defendant GANDARA possessed such firearm and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

        a.   Robbery, in violation of California Penal Code Section 211, in the Superior Court for the State of California, County of Los Angeles, Case Number A022924, on or about February 26, 1982;

        b.   Assault with a Firearm, in violation of California Penal Code Section 245(a)(2), in the Superior Court for the State of California, County of Los Angeles, Case Number NA026455, on or about September 9, 1996;

        c.   Possession of Controlled Substance, in violation of California Health and Safety Code Section 11377(a), in the Superior

Court for the State of California, County of Los Angeles, Case Number NA080318, on or about March 20, 2009;

d.    Failure to Register as Sex Offender, in violation of California Penal Code Section 290.013(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA080318, on or about March 20, 2009;

e.    Vehicle Theft, in violation of California Vehicle Code Section 10851(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA109295, on or about June 20, 2018; and

f.    Sale of Vehicle Identification Number, in violation of California Vehicle Code Section 10752(b), in the Superior Court for the State of California, County of Los Angeles, Case Number NA109295, on or about June 20, 2018.

70

COUNT TWENTY-EIGHT

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT ORDAZ]

83.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

84.  On or about September 29, 2024, in Los Angeles County, within the Central District of California, defendant ORDAZ knowingly and intentionally possessed with intent to distribute more than fifty grams, that is approximately 159.95 grams, of methamphetamine, a Schedule II controlled substance.

71

COUNT TWENTY-NINE

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT ORDAZ]

85.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

86.  On or about September 29, 2024, in Los Angeles County, within the Central District of California, defendant ORDAZ knowingly used and carried a firearm, namely, a Smith and Wesson Special CTG 10-5, .38 caliber revolver, bearing serial number 96086, during and in relation to, and possessed the firearm in furtherance of, a drug trafficking crime, namely, Possession with Intent to Distribute Methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii), as charged in Counts Two and Twenty-Eight of this Indictment.

COUNT THIRTY

[18 U.S.C. § 922(g)(1)]

[DEFENDANT ORDAZ]

87.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

88.  On or about September 29, 2024, in Los Angeles County, within the Central District of California, defendant ORDAZ knowingly possessed a firearm and ammunition, namely, a Smith and Wesson Special CTG 10-5, .38 caliber revolver, bearing serial number 96086, and six rounds of .38 caliber ammunition, in and affecting interstate and foreign commerce.

89.  Defendant ORDAZ possessed such firearm and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

a.   Possession of Controlled Substances in Prison, in violation of California Penal Code Section 4573.6(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA106341, on or about June 5, 2017;

b.   Vehicle Theft, in violation of California Vehicle Code Section 10851(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA110199, on or about December 5, 2018;

c.   Fleeing a Police Vehicle While Driving Recklessly, in violation of California Vehicle Code Section 2800.2, in the Superior Court for the State of California, County of Los Angeles, Case Number NA110637, on or about December 5, 2018;

73

d.    Vehicle Theft, in violation of California Vehicle Code Section 10851(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA115795, on or about December 17, 2020;

e.    Vehicle Theft, in violation of California Vehicle Code Section 10851(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA116560, on or about July 27, 2021; and

f.    Fleeing a Police Vehicle While Driving Recklessly, in violation of California Vehicle Code Section 2800.2, in the Superior Court for the State of California, County of Los Angeles, Case Number NA117181, on or about July 27, 2021.

COUNT THIRTY-ONE

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT ORDAZ]

90.    Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

91.    On or about October 22, 2024, in Los Angeles County, within the Central District of California, defendant ORDAZ knowingly and intentionally possessed with intent to distribute more than 50 grams, that is approximately 83.1 grams, of methamphetamine, a Schedule II controlled substance.

75

COUNT THIRTY-TWO

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT CANO-RODRIGUEZ]

92.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

93.  On or about December 10, 2024, in Los Angeles County, within the Central District of California, defendant CANO-RODRIGUEZ knowingly and intentionally possessed with intent to distribute more than 50 grams, that is approximately 2,836 grams, of methamphetamine, a Schedule II controlled substance.

76

COUNT THIRTY-THREE

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT CANO-RODRIGUEZ]

94. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

95. On or about December 10, 2024, in Los Angeles County, within the Central District of California, defendant CANO-RODRIGUEZ knowingly used and carried a firearm, namely, a CZ P-09, 9mm caliber pistol, bearing serial number B634834, during and in relation to, and possessed the firearm in furtherance of, a drug trafficking crime, namely, Possession with Intent to Distribute Methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii), as charged in Counts Two and Thirty-Two of this Indictment.

77

COUNT THIRTY-FOUR

[18 U.S.C. § 922(g)(1)]

[DEFENDANT CANO-RODRIGUEZ]

96.  Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

97.  On or about December 10, 2024, in Los Angeles County, within the Central District of California, defendant CANO-RODRIGUEZ knowingly possessed a firearm and ammunition, namely, a CZ P-09, 9mm caliber pistol, bearing serial number B634834, 33 rounds of 9mm caliber ammunition, and 24 rounds of .40 caliber ammunition, in and affecting interstate and foreign commerce.

98.  Defendant CANO-RODRIGUEZ possessed such firearm and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

        a.    Possession of Controlled Substances while Armed with a Firearm, in violation of California Health and Safety Code Section 11370.1, in the Superior Court for the State of California, County of Los Angeles, Case Number NA073125, on or about March 16, 2007;

        b.    Carrying a Loaded Firearm, in violation of California Penal Code Section 12031(a)(1), in the Superior Court for the State of California, County of Los Angeles, Case Number NA073125, on or about March 16, 2007;

        c.    Carjacking, in violation of California Penal Code Section 215(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA073988, on or about September 19, 2007; and

78

d.    Petty Theft with Prior Conviction, in violation of California Penal Code Section 666(b), in the Superior Court for the State of California, County of Los Angeles, Case Number NA097540, on or about June 24, 2014.

COUNT THIRTY-FIVE

[18 U.S.C. § 922(g)(1)]

[DEFENDANT WERTZ]

99.   Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

100. On or about February 10, 2025, in Los Angeles County, within the Central District of California, defendant WERTZ knowingly possessed a firearm and ammunition, namely, one Colt, Commander Series 80, .45 caliber pistol, bearing serial number CJ35130, and three rounds of .45 caliber ammunition, in and affecting interstate and foreign commerce.

101. Defendant WERTZ possessed such firearm and ammunition knowing that she had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

a.   Possession of Controlled Substance While Armed, in violation of California Health and Safety Code Section 11370.1(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA09657301, on or about October 29, 2013;

b.   Possession of Controlled Substance While Armed, in violation of California Health and Safety Code Section 11370.1(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA103787, on or about April 3, 2017;

c.   Possession of Cocaine Base for Sale, in violation of California Health and Safety Code Section 11351.5, in the Superior Court for the State of California, County of Los Angeles, Case Number NA103781, on or about April 3, 2017;

80

d.    Prohibited Possession of a Firearm, in violation of California Penal Code Section 29800(a)(1), in the Superior Court for the State of California, County of Los Angeles, Case Number NA121008, on or about February 2, 2023;

e.    Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court for the State of California, County of Los Angeles, Case Number YA107022, on or about March 13, 2023; and

f.    Vehicle Theft, in violation of California Vehicle Code Section 10851(a), in the Superior Court for the State of California, County of Los Angeles, Case Number YA106936, on or about March 13, 2023.

81

COUNT THIRTY-SIX

[18 U.S.C. § 922(g)(1)]

[DEFENDANT MANDAC]

102. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

103. On or about July 11, 2024, in Los Angeles County, within the Central District of California, defendant RICHARD ANTHONY MANDAC, aka "Richie," knowingly possessed a firearm, namely, a Taurus G3c, 9mm caliber pistol, bearing serial number ACB512797, and 19 rounds of 9mm caliber ammunition, in and affecting interstate and foreign commerce.

104. Defendant MANDAC possessed such firearm and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

a.    Voluntary Manslaughter, in violation of California Penal Code Section 192(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA053043, on or about October 31, 2003;

b.    Attempted Carjacking, in violation of California Penal Code Section 215(a) and 664, in the Superior Court for the State of California, County of Los Angeles, Case Number NA053043, on or about October 31, 2003;

c.    Prohibited Possession of a Firearm, in violation of California Penal Code Section 29800(a)(1), in the Superior Court for the State of California, County of Los Angeles, Case Number NA112518, on or about August 12, 2019;

d. Prohibited Possession of a Firearm, in violation of California Penal Code Section 29800(a)(1), in the Superior Court for the State of California, County of Los Angeles, Case Number NA115822, on or about January 28, 2021;

e. Prohibited Possession of a Firearm, in violation of California Health and Safety Code Section 11366.8(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA115822, on or about January 28, 2021;

f. Prohibited Possession of a Controlled Substance in Jail, in violation of California Penal Code Section 4573.6(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA115822, on or about September 13, 2021; and

g. Vehicle Theft, in violation of California Vehicle Code Section 10851(a), in the Superior Court for the State of California, County of Los Angeles, Case Number TA154901, on or about September 24, 2021.

COUNT THIRTY-SEVEN

[18 U.S.C. § 922(g)(1)]

[DEFENDANT TITUS]

105. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

106. On or about December 7, 2023, in Los Angeles County, within the Central District of California, defendant TITUS knowingly possessed firearms and ammunition, namely, a Ruger SR9c, 9mm caliber pistol, bearing serial number 339-00197, a Smith and Wesson Model 686-4, .357 caliber revolver, bearing serial number BSB7513, six rounds of Guilio Fiocchi Lecco, 9mm caliber ammunition, one round of Winchester, 9mm caliber ammunition, and six rounds of CBC Global Ammunition, .357 caliber ammunition, in and affecting interstate and foreign commerce.

107. Defendant TITUS possessed such firearms and ammunition knowing that he had previously been convicted of the following felony crimes, punishable by a term of imprisonment exceeding one year:

a.    Possession of a Controlled Substance, in violation of California Health and Safety Code Section 11377(a), in the Superior Court for the State of California, County of Los Angeles, Case Number TA054464, on or about December 2, 1999;

b.    Pass Completed Checks, in violation of California Penal Code Section 475(c), in the Superior Court for the State of California, County of Los Angeles, Case Number NA042210, on or about April 13, 2000;

c.    Sell Dangerous Weapon, in violation of California Penal Code Section 12020(a), in the Superior Court for the State of

84

California, County of Los Angeles, Case Number NA042210, on or about April 13, 2000;

d.    Pass Fictitious Check, in violation of California Penal Code Section 476, in the Superior Court for the State of California, County of Los Angeles, Case Number VA058682, on or about May 3, 2000;

e.    Grand Theft (Fraud), in violation of California Penal Code Section 484e(d), in the Superior Court for the State of California, County of Los Angeles, Case Number NA047646, on or about February 22, 2001; and

f.    Possession of a Controlled Substance, in violation of California Health and Safety Code Section 11377(a), in the Superior Court for the State of California, Orange County, Case Number 02WF1211, on or about December 10, 2002.

                         COUNT THIRTY-EIGHT

                      [18 U.S.C. § 922(g)(1)]

                       [DEFENDANT GANDARA]

108. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

109. On or about October 7, 2025, in Los Angeles County, within the Central District of California, defendant GANDARA knowingly possessed a firearm and ammunition, namely, a CZ 75 P-01, 9mm caliber pistol, bearing serial number E032920, three rounds of Ammo Inc. 9mm caliber ammunition, two rounds of Guilio Fiocchi Lecco 9mm caliber ammunition, one round of Sig Sauer 9mm caliber ammunition, one round of Federal Cartridge 9mm caliber ammunition, four rounds of Winchester 9mm caliber ammunition, one round of Speer 9mm caliber ammunition, one round of Sellier and Bellot 9mm caliber ammunition, one round of Precision Made Cartridges 9mm caliber ammunition, and one round of Aguila 9mm caliber ammunition, in and affecting interstate and foreign commerce.

110. Defendant GANDARA possessed such firearm and ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

          a.    Robbery, in violation of California Penal Code Section 211, in the Superior Court for the State of California, County of Los Angeles, Case Number A022924, on or about February 26, 1982;

          b.    Assault with a Firearm, in violation of California Penal Code Section 245(a)(2), in the Superior Court for the State of California, County of Los Angeles, Case Number NA026455, on or about September 9, 1996;

                              86

c.    Possession of Controlled Substance, in violation of California Health and Safety Code Section 11377(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA080318, on or about March 20, 2009;

d.    Failure to Register as Sex Offender, in violation of California Penal Code Section 290.013(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA080318, on or about March 20, 2009;

e.    Vehicle Theft, in violation of California Vehicle Code Section 10851(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA109295, on or about June 20, 2018; and

f.    Sale of Vehicle Identification Number, in violation of California Vehicle Code Section 10752(b), in the Superior Court for the State of California, County of Los Angeles, Case Number NA109295, on or about June 20, 2018.

COUNT THIRTY-NINE

[18 U.S.C. § 922(g)(1)]

[DEFENDANT BALANZAR]

111. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

112. On or about October 7, 2025, in Los Angeles County, within the Central District of California, defendant BALANZAR knowingly possessed approximately 29 rounds of 5.56mm caliber ammunition, in and affecting interstate and foreign commerce.

113. Defendant BALANZAR possessed such ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

a.    Carrying a Loaded Firearm in Public, in violation of California Penal Code Section 25850(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA093492, on or about October 31, 2012;

b.    Prohibited Possession of a Firearm, in violation of California Penal Code Section 29800(a)(1), in the Superior Court for the State of California, County of Los Angeles, Case Number NA098162, on or about February 7, 2014; and

c.    Attempted Murder, in violation of California Penal Code Sections 187(a) and 664, in the Superior Court for the State of California, County of Los Angeles, Case Number NA101367, on or about December 4, 2015.

SENTENCING ALLEGATION

[21 U.S.C. § 851]

[DEFENDANT NANIA]

114. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

115. Defendant NANIA, prior to committing the offense alleged in Count Two of this Indictment, had been finally convicted of one or more serious violent felonies as that term is defined and used in Title 21, United States Code, Sections 802(59), 841, and 960, namely, Murder, in violation of California Penal Code Section 187(a), and Assault with a Firearm on a Person, in violation of California Penal Code Section 245(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA027967, on or about January 24, 1997, for which defendant NANIA served a term of imprisonment of more than 12 months.

SENTENCING ALLEGATION

[21 U.S.C. § 851]

[DEFENDANT WERTZ]

116. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

117. Defendant WERTZ, prior to committing the offense alleged in Count Two of this Indictment, had been finally convicted of one or more serious drug felonies as that term is defined and used in Title 21, United States Code, Sections 802(58), 841, and 960, namely, Possession of Cocaine Base for Sale, in violation of California Health and Safety Code Section 11351.5, in the Superior Court for the State of California, County of Los Angeles, Case Number NA103787, on or about April 3, 2017, for which defendant WERTZ served a term of imprisonment of more than 12 months. Defendant WERTZ was released from a term of imprisonment for that offense within 15 years of the commencement of the offense alleged in Count Two of this Indictment.

SENTENCING ALLEGATION

[21 U.S.C. § 851]

[DEFENDANT PEREZ]

118. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

119. Defendant PEREZ, prior to committing the offense alleged in Count Two of this Indictment, had been finally convicted of one or more serious violent felonies as that term is defined and used in Title 21, United States Code, Sections 802(59), 841, and 960, namely, two counts of Assault with a Semi-Automatic Firearm, in violation of California Penal Code Section 245(b), in the Superior Court for the State of California, County of Los Angeles, Case Number NA090069, on or about April 19, 2013, for which defendant PEREZ served a term of imprisonment of more than 12 months.

SENTENCING ALLEGATION

[21 U.S.C. § 851]

[DEFENDANT ZEPEDA]

120. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

121. Defendant ZEPEDA, prior to committing the offense alleged in Count Two of this Indictment, had been finally convicted of a serious violent felony as that term is defined and used in Title 21, United States Code, Sections 802(59), 841, and 960, namely, Assault with a Deadly Weapon, in violation of California Penal Code Section 245(a)(1), in the Superior Court for the State of California, County of Los Angeles, Case Number NA076860, on or about February 29, 2008, for which defendant ZEPEDA served a term of imprisonment of more than 12 months.

SENTENCING ALLEGATION

[21 U.S.C. § 851]

[DEFENDANT LOPEZ]

122. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

123. Defendant LOPEZ, prior to committing the offense alleged in Count Two of this Indictment, had been finally convicted of a serious drug felony as that term is defined and used in Title 21, United States Code, Sections 802(58), 841, and 960, namely, Sale of Methamphetamine, in violation of California Health and Safety Code Section 11379(a), in the Superior Court for the State of California, County of Los Angeles, Case Number NA073147, on or about April 8, 2008, for which defendant LOPEZ served a term of imprisonment of more than 12 months. Defendant LOPEZ was released from a term of imprisonment for that offense within 15 years of the commencement of the offense alleged in Count Two of this Indictment.

124. Defendant LOPEZ, prior to committing the offense alleged in Count Two of this Indictment, had been finally convicted of a serious violent felony as that term is defined and used in Title 21, United States Code, Sections 802(59), 841, and 960, namely, Mayhem, in violation of California Penal Code Section 203, in the Superior Court for the State of California, County of Los Angeles, Case Number BA407175, on or about March 15, 2016, for which defendant LOPEZ served a term of imprisonment of more than 12 months.

93

SENTENCING ALLEGATION

[21 U.S.C. § 851]

[DEFENDANT BALANZAR]

125. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

126. Defendant BALANZAR, prior to committing the offenses alleged in Counts Two, Eight, Eleven, Twelve, Thirteen, Sixteen, and Seventeen of this Indictment, had been finally convicted of a serious violent felony as that term is defined and used in Title 21, United States Code, Sections 802(59), 841, and 960, namely, Attempted Murder, in violation of California Penal Code Sections 187(a) and 664, in the Superior Court for the State of California, County of Los Angeles, Case Number NA101367, on or about December 4, 2015, for which defendant BALANZAR served a term of imprisonment of more than 12 months.

94

SENTENCING ALLEGATION

[21 U.S.C. § 851]

[DEFENDANT CASTRO]

127. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

128. Defendant CASTRO, prior to committing the offense alleged in Count Two of this Indictment, had been finally convicted of a serious drug felony as that term is defined and used in Title 21, United States Code, Sections 802(58), 841, and 960, namely, Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B) and 846, in the United States District Court for the Central District of California, Case Number 2:11-cr-00322-VBF, on or about April 10, 2012, for which defendant CASTRO served a term of imprisonment of more than 12 months. Defendant CASTRO was released from a term of imprisonment for that offense within 15 years of the commencement of the offense alleged in Count Two of this Indictment.

SENTENCING ALLEGATION

[21 U.S.C. § 851]

[DEFENDANT DURAN]

129. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

130. Defendant DURAN, prior to committing the offenses alleged in Counts Two and Seven of this Indictment, had been finally convicted of a serious violent felony as that term is defined and used in Title 21, United States Code, Sections 802(59), 841, and 960, namely, Assault with a Deadly Weapon, in violation of California Penal Code Section 245(c), in the Superior Court for the State of California, County of Los Angeles, Case Number NA103163, on or about April 7, 2016, for which defendant DURAN served a term of imprisonment of more than 12 months.

96

SENTENCING ALLEGATION

[21 U.S.C. § 851]

[DEFENDANT GANDARA]

131. Paragraphs 1 through 18 and 21 of this Indictment are realleged here.

132. Defendant GANDARA, prior to committing the offenses alleged in Counts Two, Twenty, Twenty-One, Twenty-Two, and Twenty-Five of this Indictment, had been finally convicted of a serious violent felony as that term is defined and used in Title 21, United States Code, Sections 802(59), 841, and 960, namely, Assault with a Firearm, in violation of California Penal Code Section 245(a)(2), in the Superior Court for the State of California, County of Los Angeles, Case Number NA026455, on or about September 9, 1996, for which defendant GANDARA served a term of imprisonment of more than 12 months.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 1963]

1.    Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given that the United States of America will seek forfeiture as party of any sentence, pursuant to Title 18, United States Code, Section 1963, and Title 28 United States Code, Section 2461(c), in the event of any defendant's conviction of any of the offenses set forth in Count One of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  Any interest the convicted defendant has acquired or maintained as a result of any such offense;

(b)  Any interest in, security of, claim against, or property or contractual right of any kind affording a source or influence over, any enterprise which the convicted defendant has established, operated, controlled, conducted, or participated in the conduct of, as a result of any such offense;

(c)  Any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection as a result of any such offense; and

(d)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

3.    Pursuant to Title 18, United States Code, Section 1963(m), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph //

98

if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[21 U.S.C. § 853; 18 U.S.C. § 924; 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853, Title 18, United States Code, Section 924, and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Two through Four, Seven, Eight, Eleven through Thirteen, Sixteen, Seventeen, Twenty through Twenty-Two, Twenty-Five, Twenty-Eight, Thirty-One, and Thirty-Two of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from any such offense;

(b) All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense;

(c)  All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(d) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

3.    Pursuant to Title 21, United States Code, Section 853(p),

//

//

100

any defendant so convicted, shall forfeit substitute property if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Five, Six, Nine, Ten, Fourteen, Fifteen, Eighteen, Nineteen, Twenty-Three, Twenty-Four, Twenty-Six, Twenty-Seven, Twenty-Nine, Thirty, and Thirty-Three through Thirty-Nine of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court;

//

102

(d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/s/
Foreperson

BILAL A. ESSAYLI
Acting United States Attorney

_for_

JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division

KEVIN J. BUTLER
Assistant United States Attorney
Acting Chief, Major Crimes
Section

KELSEY A. STIMSON
Assistant United States Attorney
Major Crimes Section

CLAIRE E. KELLY
Assistant United States Attorney
Deputy Chief, General Crimes
Section